Appellant number 10-0595, Theresa Dixon v. Roseland Community Hospital Both sides step up and identify yourselves for us Good morning, my name is Deanne Brown and I represent the appellant Good morning, my name is Robert Chemmers and I represent my partner Scott Howey We are the attorneys of record for Dr. Schock and for the purpose of the oral argument I will be representing all of the appellants We were waiting to see what you were going to do there Alright, as you know we are pretty liberal on time so do what you have to do but don't take advantage of us Alright Good morning, Justice Fitzgerald Smith, Justice Epstein, Justice House Good morning May it please the court, my name is Deanne Brown and together with my partner Alvin Becker I represent the appellant, Theresa Dixon On May 13, 2004, Dixon individually and as special administrator of the estate of Loretta Buckner brought a complaint on behalf of her deceased mother, Loretta Buckner, against the appellees as well as Roseland Hospital and the doctors which I'm going to generally refer to as the doctors today alleging survival and wrongful death claims after her mother died due to the negligent acts or omissions of the doctors The doctors moved to dismiss the complaint as time barred pursuant to section 2619A5 Ms. Brown, I do think we've all read the briefs and we're familiar with the factual setting of the case so if you want to move into your argument Thank you judge, my argument is that the trial court erred when it made its ruling It erred because it found that Dixon's mere suspicions about the cause of her mother's death were enough to start the clock ticking on the statute of limitations Yet this court has repeatedly held that such mere suspicions are not enough to trigger the statute of limitations until confirmed by medical records or evidence The court erred because Buckner was in poor health long before she was admitted to the hospital Yet there was absolutely no medical testimony offered in the trial court as to whether her prior medical condition could have caused her death What were her prior medical conditions? She had a number of medical conditions which I will refer to and I will attempt to read them properly She was 69 years old, she was obese, she was on Coumadin She was admitted to the hospital with a history of ischemic cardiomyopathy, hypertension, hypothyroidism and was found to have ventricular tachycardia She had previously undergone gallbladder surgery and she had suffered a heart attack and when she was admitted to the hospital she had shortness of breath, dizziness, indigestion and fatigue and an IV was inserted in her left hand Doesn't this case really come down to one legal question which is whether this is a mere suspicion or whether all the circumstances put a reasonable person on notice as to the fact that there was an error that caused her injury That is the question, that's exactly what we portrayed in our brief and when I look at the history of this court's decisions about mere suspicions it's clear to me that the trial court erred What do you see as insufficient or when is there adequate notice to know that there was negligence Not when is there adequate notice as to the injury but when is there adequate notice that something was done wrong I believe under the case law it teaches us that there is adequate notice when there is some confirmation by medical, either a medical report an expert report or some form of testimony It has to be from a doctor or some medical testimony How do we then get around her deposition I think her deposition shows that there's a number of disputed questions of fact and as you know in a 2619 motion that doesn't fly and I can go through them with the court, what I think are significant Her own testimony reveals uncertainty actually as to when she became aware of the possibility that her mother's death would have been caused by medical negligence First there's a disputed question of fact as to whether any of her many health problems she experienced before entering the hospital could have been a potential cause of Buckner's death As my opposing counsel pointed out in their briefs there's no medical testimony that those could have caused it but yet in fact that's the whole point of this, there wasn't allowed to be any and certainly there's a disputed question of fact as to how a lay person can be expected to know which of the various medical ailments from which her mother suffered and she was hospitalized for 20 days with those medical ailments But if you express an opinion, a belief that your injury was caused by the negligence of another whether or not that is the case, if you make that expression isn't that exactly the type of issue that can cause, can trigger the running of the time? If there's no, if it's clear and free from doubt, but I don't think that's the case here I mean she, at one point during her deposition, Buckner testified that she first became aware that negligence may have been part of her mother's death by looking at her, at that hand But at a later point during her deposition, she qualified her testimony and she said that she had a feeling that the condition of Buckner's hand was related to her death and that she felt that whoever put the IV in her hand might have done something wrong So at that point, I don't think it's clear at all and then there was subsequent testimony where Dixon said that initially she testified that in her deposition she was planning to contact a lawyer right away after Buckner died based on what she saw with respect to the hand But when Dixon was subsequently asked by another lawyer during her deposition if she planned to contact a lawyer right away when she saw her mother's hand Dixon's answer was no, and that she planned that afterwards She also testified that she did not know or remember how soon it was after Buckner passed away that she contacted a lawyer and that she was still trying to figure out when in fact she first knew that a lawsuit would have been filed over her mother's death She and her mother both made statements that they were going to be contacting a lawyer because of their belief that there was negligence involved And that followed, didn't it, the call of the excited utterance of the medical personnel at the University of Chicago when her mother was admitted there on transfer from Roseland which is, oh my God, what did they do to you over there? Well, I guess what I'm saying is that I don't think as a layperson she can be expected to make the leap to, oh, what happened to your hand? To, oh, this must have caused her death When she first realized that the gangrene was what caused her death that is exactly when the autopsy report came out That's the date that should trigger the statute of limitations She went to hospital originally at Roseland with really no complaints about her hand, correct? To the best of my knowledge After she went to Roseland, her hand turned, according to the words in the record, jet black Correct It felt like it was burning And on a transfer to the University of Chicago you had the exclamation from the doctor that we've just referred to Following which, both she and her mother, both the plaintiff and the deceived made the expression that they were going to be contacting a lawyer They made that expression, but then again, during her deposition testimony she clearly stated that she was unsure when she was going to be contacting a lawyer So again, I don't think that the record can be said that it's clear and free from doubt in that circumstance And I certainly think that the trial court's decision doesn't square with this court's rulings in the two main cases that we cited which is Young v. McKeague and the Clark case And I think they're very similar for a few reasons In the first case, Young v. McKeague, the takeaway that I took from this court and anyone reading the case would say that a plaintiff's suspicions regarding the receipt of inappropriate medical care which contributed to the patient's death are not enough to trigger the statute of limitations And in that case, the statute of limitations begins to run when the plaintiff possesses enough information concerning the injury to apprise a reasonable person of the need for further inquiry to determine whether a legal wrong has been committed And what was interesting in that case is that even though the plaintiff certainly had suspicions in Young that something was wrong because her husband went in on a routine I think it was like a pneumonia and then died In fact, the medical treatment She only confirmed that inappropriate medical treatment was received when she looked at the available medical records That's what this court found And those available medical records told her that her husband's death was a result of cardiac arrest That was not timely recognized and treated by the medical professionals So again, just like in our case She was never told, nobody told Dixon anything Finally, the death certificate said something completely different The death certificate said nothing about gangrene It wasn't until she received the autopsy report that in fact she learned that it was the gangrene And that is when the statute of limitations should start ticking according to the Young case Likewise, according to the Clark case This court concluded that a mother's suspicions of medical negligence in the care of her premature infant were not enough to trigger the statute of limitations Rather, again, it was until the plaintiff received an expert's report revealing that the infant's death was due to a dislarged venous catheter that the statute of limitations began to run Can you contrast that with Nair and Castello? Certainly Well, the... Let's see, the Castello case talked about This court, again, concluded that the statute of limitations began to run on the date the plaintiff was informed by doctors that she had a four centimeter lesion on her cervix and the possibility of having as little as 30 months to live There again, we have a plaintiff being informed by a doctor that the previous information you were given was not true, was not right And therefore, that's what triggered And it was a medical report that triggered the statute of limitations in Castello As far as Nair goes I mean, I thought Nair was distinguishable because it wasn't a wrongful death case In that case, there was no question as to whether a layperson like Dixon should be charged with knowledge of the cause of death So, as I indicated I do believe that there's not only In our briefs, not only did the trial court not adhere to Young, not adhere to Clark But there was another case that we cited called Saunders That was a 5th district case That case also addressed the issue of whether a plaintiff became possessed of sufficient information that his injury was wrongfully caused thereby triggering the statute of limitations Again, the appellate court in that case reversed the trial court's dismissal of a complaint as time barred noting that when the plaintiff certainly knew of his injury and in that case the injury was an amputated arm he did not learn that he received inappropriate medical care causing him to lose his arm until so informed by a doctor So in Young, the statute of limitations clock did not start to run until the plaintiff's suspicions as to the inappropriate treatment were confirmed by available medical records In Clark, the trigger was the receipt of an expert's report In Saunders, the clock did not start ticking until the plaintiff was informed by a doctor of inappropriate medical care Yet in our case, Dixon had no such medical confirmation until she received the autopsy report Prior to that, all she had were her suspicions and that is not enough under the law So when the trial court determined as a matter of law that Dixon's complaint was barred by the statute of limitations based only on a layperson's suspicions of wrongdoing rather than on when she became possessed of sufficient information to know that her mother's death was wrongfully caused the trial court's ruling should be reversed We also indicated in our brief that there's a disputed question of fact here as to whether, how, and when Dixon should have known that her mother's death was wrongfully caused prior to the completion of the autopsy report So because there's a disputed question of fact as to when the statute of limitations began the trial court shouldn't have concluded as a matter of law that the statute of limitations was blown Again, Dixon's testimony her deposition testimony certainly is far from clear and it does reveal uncertainty as to when she became aware of the possibility that her mother's death may have been caused by medical negligence There's a similar case we cited called Christina v. St. James a first district appellate court case in 1978 saying that where the trial court was unable to conclude as a matter of law at which point a patient discovered or should have discovered that she was injured by doctor's conduct the trial court erred in dismissing the case as time barred and remanded the case back to the trial court to allow presentation of evidence on this question and we're asking that this court do the same at this point and remand the case back to the trial court for a full hearing on the merits to determine whether or when Ms. Dixon should have known that both of the injury and that it was wrongfully caused I would certainly ask the court to keep in mind the Supreme Court's mandate in Witherall v. Weimer where they basically have said that a court may determine as a matter of law when the injured party knew or reasonably should have known both of the injury and that it was wrongfully caused only in those situations in which the undisputed facts lead to a single conclusion and Witherall court went on to say in many if not most cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact so here the finder of fact it was just concluded as a matter of law there was no finding of fact and based on the unclear testimony of Ms. Dixon and only her testimony we maintain that that was erroneous the other part of our brief dealt with something that the trial court did not address at all which was the section 2622 physician's report would the court like to hear a further argument on that? I don't think you need to ok I don't think that's going to go anywhere ok thank you so in conclusion there is no question that Dixon knew something was wrong with her mother's hand no question but to equate that knowledge with knowledge as a matter of law that her mother's death was wrongfully caused is a leap that I don't believe a layperson should be required to make and a conclusion that no court should be permitted to draw so we do respectfully request that this court reverse that order entered by the circuit court on January 29, 2010 and enter an order remanding the case back to the circuit court so that the trier of fact may examine in a full hearing on the merits the factual circumstances upon which Dixon's suspicion of malpractice were predicated and determine if those suspicions would lead a reasonable person to believe that Buckner's death was wrongfully caused there was no affidavit supplied at the motion at all or no attempt to say we need further discovery or it's my recollection that the motion, I don't believe that was attached to the motion I believe it was raised in argument before the court there's no other questions thank you for your time morning again your honors may it please the court for all of the defendants appellees for the purpose of the hearing Robert Chambers along with Scott Hyde this is a statute of limitations case pure and simple we don't want this panel to turn Illinois law back 30 or 35 years when I first started arguing these appeals on this very issue we just heard plaintiff's counsel say that her client unmistakably knew there was something wrong with her mother's hand in order for the statute of limitations to run all you need are two things you need a plaintiff who knows or reasonably should know both that an injury occurred and we just heard that that was unmistakable and that it was wrongfully caused we don't know, we don't need and it does not mean that the plaintiff must have knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action or knowledge of the full extent of the injury before the statute is triggered it means that the plaintiff must have sufficient information concerning the injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved so it's your position that even if there were under the belief that the ultimate passing of the decedent was due to something unrelated to the hand and the gangrene that resulted from that the fact that she expressed some belief or had some belief that negligence caused the hand to turn black would in and of itself be a triggering event for running the statute of limitations yes, on this record and the facts are contrary to what Ms. Brown said the facts are undisputed the facts are based on the testimony of the plaintiff the plaintiff's testimony was clear, it was coherent and it was consistent and it was honest and there's only one conclusion to be drawn from this that both the plaintiff and the decedent knew before the decedent's demise that the decedent had been injured by negligence in the insertion of the IV at Rosalind immediately after that was done, the first time her daughter visited her in the hospital the mother told her daughter, the plaintiff in this case it burned, it was liquid fire going through my veins look at my hand that hand was turning black that alone doesn't mean anything it was pain, it was described as shocking and it was described as look at my hand that was a continuous discussion if it was put in you, you'd say the same thing and then a few days later when she was transferred from Rosalind to the University of Chicago the emergency room doctor there asked what in the hell did they do to you over there and she was told, the plaintiff was told that one in the morning of the day her mother eventually passed away that parts of her hand were entering the blood stream and that she would have cardiac arrest so she knew, she knew at least to be put on the reasonable notice of inquiry as to whether it was wrongfully caused you don't have to know the exact reason you don't have to know which of several defendants could or might be negligent and you don't have to know the full extent of the injury all you need is knowledge of an injury, which we heard from the plaintiff's attorney that it was unmistakable that it was an injury and that it was wrongfully caused now, the cases that the plaintiff relies on Young v. McKee, Clark v. Galen, I don't have to distinguish panels of this court in Nair and Castello already did Nair distinguished Young, Castello distinguished both Young and Clark and it distinguished them on the basis that those cases involved pre-existing injuries with misinformation this case, there is no evidence that the plaintiff ever thought that her mother's malady was due to some pre-existing condition there's no evidence of that in this record she was taken to the hospital because of shortness of breath an IV was inserted and within hours her hand turned black, to the point it became gangrenous to the point that the plaintiff herself said I want my mother transferred from that hospital to the University of Chicago and that was finally arranged and I already told the court, and you're well aware of the comment by the emergency room physician there's no history of anything similar she went to the hospital because of shortness of breath and that sets this case apart from the plaintiff's authorities of Young and Clark where the plaintiffs could reasonably claim to have believed that their decedents died of pre-existing pneumonia in Young or prematurity in Clark this case is on point with this court's decisions in Nair and Castello Nair, the patient went to the hospital with abdominal pain and left unable to use her legs Castello, the patient was told she had no cervical cancer she was fine, everything was fine two months later she was told she was terminal and only had months to live in each of those cases you don't have in this situation with the statements that we're all familiar with that both of you have discussed in your briefs in argument today you don't have a definitive statement from anyone that I know that the injury was caused by negligence you have basically circumstantial evidence of that on this record, wouldn't you agree? No one said, other than the plaintiff's testimony that she was told by a doctor at one in the morning that parts of her mother's left hand were entering the bloodstream and would cause a cardiac arrest but not that that entering of the bloodstream by the hand was caused by someone's mistake this is what we're talking about my question is, you don't have a situation where there is a definitive statement that I know or somebody saying definitively this was caused by someone's negligence and so my question is, in the absence of that wouldn't it be appropriate to have a hearing so that they could fully flush out exactly what this person thought and when she thought it I think respectfully, Justice Epstein, the plaintiff did testify and that's at C-717 of the record and I quote I understood it to mean that whoever put that IV in her hand did something wrong that's what I felt, that's what I came to the conclusion of but when did she come to that conclusion does she not more or less suspect and is not sure until she gets the autopsy report and what does the word feel or felt mean in that context that's her belief, that's her opinion how does that differentiate from a suspicion I think a suspicion is less definitive than a belief so feel is somewhere between that feel is belief, suspicion is different she testified, I felt it and the doctor said it and she said I came to the conclusion once you have a conclusion it's no longer a suspicion but again before the autopsy report when can she come to an adequate conclusion I mean when does she really know and is it subjective and not objective she testified that she regarded the opinion of the University of Chicago doctor that there was negligence in her mother's care at Roseland that was her conclusion I mean besides the fact that we have two different law firms involved in this and I don't know where or why the first one wasn't sued but that's irrelevant here we are dealing with the statute of limitations I don't know if the statute ran on that too we have a situation here where the decedent passed away on April 26 the suit was filed on May 13 both the decedent and her daughter said they were going to get lawyers involved they didn't have to get lawyers involved to tell them there was a cause of action this case is no different than the sudden and traumatic injury cases which the plaintiff ignored in reply where the statute runs as soon as you have a situation which is uncharacteristic of a pre-existing malady the hand turning black and becoming gangrenous because she went to the hospital because of shortness of breath is unrelated to any of the pre-existing maladies that the decedent may have experienced during her life all of which were long before the episode that led her to Roseland in April of 2002 there's nothing contrary in this record and that's when she said I'm getting a lawyer when I get out of here that was the decedent's telling to her daughter this is not a case of submission this is a case where the two required elements for the running of the statute of limitations clearly coalesced either at the time they recognized the injury which was the hand turning black hours after the insertion of the IV which led to the ultimate demise of the plaintiff's decedent the coalescence of knowledge of an injury unmistakable knowledge of an injury and that it may have been wrongfully caused they don't need to know the exact cause they don't need to know who was responsible and why for that all they need to know for the statute to run for them to be put on notice of inquiry to determine if there is actionable conduct is a coalescence of those two points knowledge of the injury and knowledge that it may have been wrongfully caused and on this record that's undisputed this case is not like Young and Clark in this court Naren Castello told us why the major distinction from Young and Clark is there the plaintiffs were told their decedent died of their pre-existing conditions and they had not so if knowledge is the touchstone the knowledge there was wrong that knowledge is not in this case plaintiff here can point to no reason she believed the decedent's condition was simply a natural consequence of a pre-existing illness there are a few unrelated dissimilar medical problems that the plaintiff testified her mother experienced long before the April 2002 hospitalization in Young and Clark the plaintiffs there may not have immediately recognized wrongful causes of the deaths they were given misinformation there is no misinformation in this case they knew or reasonably should have known of the wrongful cause the injuries were drastic changes this is in Naren Castello in this case drastic changes in the medical conditions that could not be confused with any pre-existing malady but you're still missing the smoking gun of a definitive statement that ties the fact that there is going to be the hand dissolving into the bloodstream that will ultimately cause the death of the decedent with a statement that it was wrongfully caused we are missing that however when the facts that were developed in this case and were considered by the trial court and led to that 13 page memorandum opinion I commend the trial court for taking that much time especially where as here this court need not even pay attention to it because it's de novo review we read it and judge Duncan Price is a fine and distinguished jurist no question about it if that smoking gun had been revealed if it existed we wouldn't have a 13 page opinion we could have a two paragraph opinion basically saying the defendant's motion is granted for those very reasons but instead the court analyzed all of the evidence as did the plaintiff as have we in our briefs and we have concluded that the facts are undisputed that the facts show that the plaintiff and her decedent knew before the decedent's demise that there was an injury and that it may have been wrongfully caused and those two points when they exist together trigger the running of the statute of limitations such that the plaintiff is then put on notice of inquiry to determine if it was in fact wrongfully caused and by whom in the absence of a statement from medical personnel that there was an injury caused by malpractice how do we tell  in this case there is no statement by a doctor and there was no statement by a doctor in Young, in Clark, or in Saunders the case is relied on by the plaintiff no reviewing court in Illinois has ever held that the statute of limitations runs when the plaintiff or prospective plaintiff is told by medical personnel in an expert opinion or in a written report that you have a cause of action no the statute runs when you have knowledge of an injury and that it may be wrongfully caused that starts the inquiry as to whether there was wrongful causation no court has held that you need a medical expert report to trigger the statute of limitations even the cases the plaintiff relies on don't say that in fact what they say is the plaintiff's there because of misinformation concerning pre-existing conditions were not put on notice and they were not barred by the statute of limitations Nair and Castello said those cases are completely distinguishable whereas here there is a sudden injury well you are told as was the plaintiff in Castello in Nair it was you go in for abdominal surgery and you come out and you can't use your legs that put that plaintiff on reasonable notice of inquiry to determine if that was wrongfully caused the same as the insertion of an IV causing a hand to turn jet black, gangrenous, painful and start emitting particles of that hand into the bloodstream my opponent did not address 2622 you don't want to hear it I will stand on our brief on that point and for all of those reasons unless this panel has other questions I would ask the court to affirm Thank you I would just like to make a few brief points I read those sudden traumatic injury cases and I did not feel, and we distinguished them in our brief I don't think they are applicable here because they talk about a fall in the hospital or a car accident that's a traumatic injury that's an injury that's not caused by some form of medical treatment in our case it's all about the medical treatment so those sudden traumatic injury cases I don't think are relevant with respect to the Young and the Clark cases I believe my opposing counsel mentioned that there was no statement by a doctor in those cases but in fact there was available medical records that was the trigger when the plaintiff saw the available medical records in Young that was the trigger for the statute of limitations not just that her suspicions were that her husband received inappropriate medical care and likewise in Clark it was the time the statute of limitations was triggered when the plaintiff received an expert's report revealing that the infant's death was due to a dislodged venous catheter so again that's medical information that's more than somebody saying what the hell did they do to your hand I mean there's a big distinction there I guess the other point I wanted to address a few times my opposing counsel mentioned the words gangrenous to the point where her hand turned gangrenous that's exactly our point our point is that my client didn't know anything about the gangrenous hand until the autopsy report revealed it and that is what I say is that's why we knew the cause of death at that point that's when she knew that gangrene that was caused by the IV that is the triggering point for the statute of limitations because there is no information even in the death certificate itself that said anything about a gangrenous hand so the only time she can be charged with that knowledge is when she got the autopsy report and that is when the statute of limitations should start running I have nothing further Thank you We enjoyed both your arguments and the briefs were very well done now I've seen everybody from the law firm also be aware that this will be out before the end of June since our quarter ends then so you'll know by the end of June Thank you all very nice arguments and briefs